Clement Cheng (CA Bar #198359)
law@clemcheng.com
**NEWHOPE LAW, PC**
4522 Katella Ave, Suite 200
Los Alamitos, CA 90720
714.825.0555

Kent E. Baldauf, Jr. (admitted *pro hac vice*)
kbaldaufjr@webblaw.com
Bryan P. Clark (admitted *pro hac vice*)
bclark@webblaw.com
Daniel H. Brean (admitted *pro hac vice*)
dbrean@webblaw.com
**THE WEBB LAW FIRM**
One Gateway Center
420 Ft. Duquesne, Blvd., Suite 1200
One Gateway Center
Pittsburgh, PA 15222
412.471.8815
*Attorneys for Plaintiff, Sportspower Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPORTSPOWER LTD., a Hong Kong Limited company, <br><br> Plaintiff, <br><br> vs. <br><br> CROWNTEC FITNESS MFG. LTD., a China Limited Company <br><br> Defendants. | Civil Action <br><br> No. 8:17-cv-2032-JLS-KES <br><br> **SPORTSPOWER'S BRIEF IN OPPOSITION TO CROWNTEC'S MOTION *IN LIMINE*** <br><br> Date: December 20, 2019 <br> Time: 10:30 a.m. <br> Room: Courtroom 10A, 10th Floor |

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................. **i**

**TABLE OF AUTHORITIES** ......................................................................... **ii**

**ISSUE NO. 1** ................................................................................................**1**

    **Crowntec's Use of the Mafia to Coerce/Extort Sportspower** ....................1

**ISSUE NO. 2** ................................................................................................**8**

    **Invalidation of Crowntec's Chinese Patent** ...................................8

**ISSUE NO. 3** ..............................................................................................**15**

    **Exclusion of Mr. Reed's Expert Testimony** .................................15

    **Concerning Supplemental Tabs 7A and 7B to His Report** .......................15

**ISSUE NO. 4** ..............................................................................................**18**

    **Realignment of the Parties** .........................................................18

**CONCLUSION**............................................................................................**25**

# TABLE OF AUTHORITIES

## *CASES*

*Abbott Labs. v. Sandoz, Inc.*,
   566 F.3d 1282 (Fed. Cir. 2009)..................................................................11

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
   228 F.3d 1338 (Fed. Cir. 2000)..................................................................12

*Anheuser-Busch, Inc. v. John Labatt Ltd.*,
   89 F.3d 1339 (8th Cir. 1996).....................................................................24

*Animal Care Sys., Inc. v. Hydropac/Lab Prods., Inc.*, No. 13-cv-00143-MSK-BNB,
   2014 WL 103812 (D. Colo. Jan. 10, 2014)...............................................23

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014)..................................................................11

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
   1 F.3d 1214 (Fed. Cir. 1993)......................................................................13

*Brazos River Auth. v. GE Ionics, Inc.*,
   469 F.3d 416 (5th Cir. 2006).......................................................................4

*Caterpillar Tractor Co. v. Berco, S.p.A.*,
   714 F.2d 1110 (Fed. Cir. 1983)..................................................................11

*Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*,
   984 F.2d 410 (Fed. Cir. 1993)....................................................................12

*Falana v. Kent State Univ.*,
   669 F.3d 1349 (Fed. Cir. 2012)........................................................... 20, 23

*FCE Benefits Administrators, Inc. v. Training, Rehab. & Dev. Inst., Inc.*,
   No. 15-cv-01160-JST, 2016 WL 4426897 (N.D. Cal. Aug. 22, 2016) ..............24

*Guidetech, Inc. v. Brilliant Instruments, Inc.*, No. C 09-5517 CW,
   2014 WL 12643007 (N.D. Cal. Mar. 25, 2014)..................................23

*Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*, No. SACV 11-0313 DOC (CWx),
   2011 WL 4965111 (C.D. Cal. Oct. 18, 2011)......................................21

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
   No. 1:09-CV-1685, 2014 WL 12489857 (M.D. Pa. May 27, 2014) ..................13

*Lincoln Nat'l Life Ins. Co. v. McClendon*,
   230 F. Supp. 3d 1180 (C.D. Cal. 2017) ....................................................4

*Plumtree Software, Inc. v. Datamize, LLC*, No. C 02-5693 VRW,
   2003 WL 25841157 (N.D. Cal. Oct. 6, 2003) .................................. 21, 22, 23, 24

*Rodriguez v. City of Los Angeles*, No. CV 11-1135 DMG (JEMx),
   2015 WL 13308598 (C.D. Cal. Aug. 11, 2015).......................................7

*Tanabe Seiyaku Co., Inc. v. U.S. Int'l Trade Comm'n*,
   109 F.3d 726 (Fed. Cir. 1997)............................................................11

*Trovan, Ltd. v. Sokymat SA, Irori*,
   299 F.3d 1292 (Fed. Cir. 2002)...........................................................20

*United States v. Miller*,
   874 F.2d 1255 (9th Cir. 1989) ...........................................................6, 7

*Wagner v. County of Maricopa*,
   747 F.3d 1048 (9th Cir. 2013) ...........................................................5, 6

## STATUTES

35 U.S.C. § 256.............................................................................20

35 U.S.C. § 261.............................................................................20

35 U.S.C. § 262.............................................................................20

## RULES

Fed. R. Civ. P. 26(a)(2)...................................................................15

Fed. R. Civ. P. 30(b)(6)....................................................................3

Fed. R. Evid. 401 ...........................................................................8

Fed. R. Evid. 402 ...........................................................................8

Fed. R. Evid. 403 ...........................................................................8

Fed. R. Evid. 602 ...................................................................................8

Fed. R. Evid. 801(a) ...........................................................................4, 7

Fed. R. Evid. 801(c)(2) .........................................................................4

Fed. R. Evid. 802 ...................................................................................8

Fed. R. Evid. 803(3) ...............................................................................5

## *REGULATIONS*

37 CFR 1.56 .........................................................................................10

## *OTHER AUTHORITIES*

Manual of Patent Examining Procedure, § 2001.06(a)..........................10

Trade-Related Aspects of Intellectual Property Rights, Article 27 ................. 11, 12

Sportspower Ltd. ("Sportspower") hereby submits the present Brief in Opposition to Crowntec Fitness Mfg., Ltd.'s ("Crowntec") Motion *in Limine* (Dkt. No. 104).

## ISSUE NO. 1
## Crowntec's Use of the Mafia to Coerce/Extort Sportspower

Crowntec's Motion should be denied as to this issue. As Crowntec's Motion admits, Sportspower's allegation that Crowntec utilized hired mafia gangsters to coerce Sportspower to agree to Crowntec's settlement demands is a central, disputed issue of Sportspower's affirmative defense. While Crowntec may not wish to have these assertions heard by the jury, the assertions are material and must be heard at trial to fairly adjudicate Sportspower's defense. Crowntec is free to cross-examine Mr. Chen as to the veracity of his account; Crowntec cannot, however, exclude Mr. Chen's testimony from trial merely because it casts Crowntec in an unfavorable light.

Crowntec correctly explains that one of Sportspower's affirmative defenses is based on a 2016 settlement agreement between the parties having released Sportspower from liability to Crowntec for, *inter alia*, the accused patent infringement in this lawsuit. *See* Dkt. No. 22, at 4-5; Dkt. No. 87-1 (agreement providing that "[t]here will no longer be any dispute between the parties in relation to financial affairs . . . ."). As detailed in Sportspower's response to Crowntec's motion for partial summary judgment on this affirmative defense, however, the

1   parties appear to disagree as to the meaning of the 2016 agreement and, in

2   particular, whether the "financial" matters resolved included the present patent

3   infringement claim by Crowntec. Dkt. No. 81; Ex. A to Dkt. 104, Chen Dep. Tr. at

4   134 (Mr. Chen testifying that the 2016 agreement resolved all claims for any

5   money—indeed, "any kind of dispute once and for all").

6       In its effort to rebut Sportspower's defense and reading of the 2016

7   agreement, Crowntec points to the 2017 "acknowledgement" signed by Ms. Joanna

8   Chen upon making the second (and final) payment owed under the 2016 settlement

9   agreement to Crowntec. Dkt. 104, at 6. But, as Crowntec admits in its Motion,

10  Sportspower vigorously denies that this "acknowledgement" in any way suggests

11  that that 2016 agreement excluded claims for patent infringement. *Id.*; Dkt. No. 81,

12  at 3-4.  Mr. Chen testified that Ms. Chen only signed the agreement under

13  "coercion and fear" because of the presence of intimidating individuals from a

14  hired "collection agency," which Mr. Chen explained was a euphemism for what

15  he understands to be mafia gangsters.  Ex. A to Dkt. No. 104, Chen Dep. Tr. at

16  132-135.  Similar circumstances surrounded the 2016 agreement. *Id.* at 97-98.

17      Although this evidence against Crowtec is undoubtedly prejudicial, it is not

18  unfairly so. The materiality of the issue and its high probative value outweighs the

19  risk of unfair prejudice. If Sportspower is to have a full and fair opportunity to

present its defense, it must be allowed to explain the circumstances of the "acknowledgement" and why it does not prove what Crowntec says it does.

Nonetheless, Crowntec would exclude this evidence on three grounds, arguing that: (1) Mr. Chen lacks personal knowledge of the events; (2) Mr. Chen's testimony would constitute inadmissible hearsay; and (3) there is no evidence to corroborate Mr. Chen's testimony.

First, as detailed in Sportspower's briefing on the related summary judgment motion, Mr. Chen is the corporate representative of Sportspower and does not need to have personal knowledge of the events. Dkt. No. 81, at 4-5.   During his deposition, as was his duty, he "testif[ied] about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). While Crowntec insists that Mr. Chen was solely questioned in his personal capacity, Crowntec cannot deny that: (1) Mr. Chen's testimony regarding the coerced "acknowledgement" was squarely within the applicable 30(b)(6) topics for which he was duly noticed and designated, and for which he appeared and was questioned on the noticed date, (2) the alleged basis for Crowntec's "withdrawing" the 30(b)(6) notice had to do with Sportspower's sales and cost information, not the settlement agreement and acknowledgement; and (3) Mr. Chen's July 17, 2019 deposition was his only deposition and Crowntec never saw fit to schedule another—ostensibly because Mr. Chen had satisfactorily testified as to all the 30(b)(6) topics. Dkt. No. 81, at 4-

5 (detailing the parties' arrangements and correspondence surrounding Mr. Chen's deposition). For all these reasons, Mr. Chen's testimony did not need to be based on his personal knowledge of the events. At trial, as during his deposition, he may recount the facts and circumstances as Ms. Chen informed him of them. *See, e.g., Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 434 (5th Cir. 2006) ("[I]f a rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within corporate knowledge to which he testified in deposition.").

Second, Mr. Chen's testimony is not hearsay. As it did in its motion for partial summary judgment, Crowntec continues to misapprehend what the Federal Rules of Evidence define as "hearsay."   Crowntec fails to identify a single "statement" uttered by Ms. Chen that Mr. Chen repeated and offered for "the truth of the matter asserted." Fed. R. Evid. 801(c)(2). The rule explains that a "'[s]tatement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." *Id.* R. 801(a). Mr. Chen testified as to Ms. Chen's *actions* (handing over payment, requesting a receipt, signing the document, etc.) and *feelings* (fear), not as to any specific utterance made by her. Ex. A to Dkt. No. 70, Chen Dep. Tr. at 134-135. This court has properly rejected hearsay objections in very similar situations. *See Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1187 n. 7 (C.D. Cal. 2017) ("Plaintiff does not point out specific statements it claims is hearsay. The Court can only find that

Defendant mentions she deposited Plaintiff's checks '[p]ursuant to the directions of Delores' . . . and 'relied upon what my mother and sister told me.' . . . These are not oral or written assertions constituting a 'statement' under the hearsay definition, nor does Plaintiff show how they are 'nonverbal conduct ... intended as an assertion.'") (internal citations omitted).  While it may be true, as Crowntec alleges, that Ms. Chen communicated the facts and circumstances to Mr. Chen via some type of "statement," nothing in the hearsay rules prevents Mr. Chen—Sportspower's corporate representative at trial, *see supra*—from relaying the facts to the jury to describe *what happened* when Ms. Chen appeared to make the payment and signed the "acknowledgement." *See id.*

Ms. Chen's then-existing fearful state of mind is also excepted from the rule against hearsay. Fed. R. Evid. 803(3). Rule 803(3) permits testimony concerning the declarant's "then-existing . . . mental feeling," but does not extend to "a statement of memory or belief to prove the fact remembered or believed." As the Ninth Circuit has explained, "the limiting language of Rule 803(3) bars statements as to *why* [the declarant] held the particular state of mind, or what he might have believed that would have induced the state of mind." *Wagner v. County of Maricopa*, 747 F.3d 1048, 1052–53 (9th Cir. 2013) (internal citations and quotation marks omitted) (emphasis added). In *Wagner*, for example, the declarant Vogel had endured a traumatic incident while in jail and subsequently made

statements about the incident to his sister, which were later offered to establish Vogel's distressed state of mind.  *Id.* at 1053.  Even though Vogel's statements were made more than a week after the incident (*id.* at 1057), they were admissible because they were not offered to prove the "truth of the fact underlying the memory or belief," but to show "the emotional impact the incident had on him." *Id.* at 1053; *id.* at 1052 (explaining that the sister "was not asserting the truth of anything that Vogel said had happened to him in jail"). So it is in this case. The facts as to what happened to Ms. Chen are admissible (as non-hearsay corporate knowledge described above), while any statements by Ms. Chen to Mr. Chen concerning her fearful mental state are excepted from the hearsay rule, and the jury is free to infer the connection. *See id.* at 1053 ("That Vogel was subjected to the [incident] was established by [other testimony]. The jury could infer the connection between the [incident] and Vogel's mental state. Exclusion of this evidence was erroneous.").

The result in *Wagner* is consistent with *United States v. Miller* (relied on by Crowntec), where the district court did not abuse its discretion by excluding a criminal defendant's attempt to introduce his own prior statement that had been offered "to show that he was confused and worn down by his interrogators." 874 F.2d 1255, 1263 (9th Cir. 1989). The statement at issue was an assertion made to an FBI agent that the defendant did not know "whether [his prior] admission

reflected something he had actually done or what the interrogators told him he had done." *Id.* The district court had concluded, correctly, that the statement concerned the defendant's "belief about a past action"—i.e., his admission—not his mindset. *Id.* at 1264.  Again, here any statement by Ms. Chen to Mr. Chen indicating her fearful state of mind is not a "belief about a past *action*" offered for its truth.[1]

Third, and finally, Crowntec's last-ditch effort to exclude Mr. Chen's testimony for lack of corroboration cites no authority whatsoever that Sportspower's defense requires any particular degree of corroboration. It also ignores the facts. First, the odd circumstance of the "acknowledgement"—having Ms. Chen sign it upon payment to Crowntec and *not in exchange for any new consideration* from Crowntec—by itself lends credibility to Mr. Chen's testimony that the agreement was signed under coercion. If not under coercion, why else

---

[1] *Rodriguez v. City of Los Angeles* (also relied on by Crowntec) is likewise inapposite. *Rodriguez* involved the exclusion from evidence of a written declaration that "describe[d] the circumstances of [the declarant's] receipt of the [criminal gang] injunction in December of 2009, his condition while subject to the injunction, and his June 2009 arrest." No. CV 11-1135 DMG (JEMx), 2015 WL 13308598, at *6 (C.D. Cal. Aug. 11, 2015). The declaration "describe[d] events that took place over the course of months if not years, most of which predated the Declaration by years." *Id.* at *7. And, as a written declaration, the declarant "presumably had an opportunity to review the Declaration, to consider its accuracy, and to discuss it with his counsel before he signed it." *Id.*  Here, to the extent any "statement" (as defined in Rule 801(a)) of Ms. Chen would be offered by Sportspower via Mr. Chen, that statement relates solely to Ms. Chen's fearful state of mind during a single, isolated incident, and does not involve a lengthy recounting of facts and circumstances over an extended period of time.

would Sportspower have agreed in 2017 to voluntarily diminish its rights under the 2016 agreement at the moment it was making its full and final payment under that 2016 agreement? Beyond that, Sportspower anticipates that it will be able to elicit testimony from Crowntec's witnesses on cross-examination to further confirm the facts as explained by Mr. Chen. Tellingly, despite its position that Sportspower is merely seeking to "smear Mr. Hsiang and Crowntec," nowhere does Crowntec unequivocally deny that Crowntec has hired individuals to intimidate and coerce Sportspower to sign what Crowntec wanted it to sign. *See* Dkt. No. 104, at 9. Crowntec's basis for its Motion on this issue is instead rooted only in evidentiary technicalities.

For the foregoing reasons, Sportspower should not be prevented from offering evidence and testimony concerning the use of terms such as "mafia" and hired "gangsters" to describe the facts and circumstances surrounding the signing of the "acknowledgement."   These facts are critical and material to properly adjudicating Sportspower's affirmative defense.   Although the evidence may portray Crowntec and its witnesses in an unfavorable light, there is no legal basis to exclude the evidence under Rules 401, 402, 403, 602, or 802, as detailed above.

### ISSUE NO. 2
### Invalidation of Crowntec's Chinese Patent

Crowntec seeks to have the court exclude any mention of the fact that Crowntec's Chinese Patent No. CN102487261 ("CN261") had all of its claims

held invalid in the Chinese Patent Office on April 25, 2019. Despite Crowntec's effort to distance the '350 patent in suit from CN261, however, the two are closely linked and there are several reasons that the jury should be entitled to hear about the ultimate fate of CN261. Moreover, Sportspower's reliance on the invalidity of CN261 is a defense against Crowntec's allegations of willful infringement—such evidence is well recognized in the law as negating the requisite culpable scienter for willfulness.

First and foremost, the '350 patent is just an English translation of CN261; CN261 discloses the same invention as the '350 patent. Dkt. No. 53-1, at 1-2; Dkt. 66-1, at ¶ 2 (Crowntec admitted in discovery that the '350 Patent "is a direct translation of" CN261 and that the two patents "ha[ve] substantially the same disclosure and subject matter"). This is the reason Crowntec can only go so far in its Motion as to call CN261 "separate" or "a separate patent"—in substance, the two documents are the same.[2] But the overlap goes even deeper. The Chinese Patent Office held all ten claims of CN261 invalid over the combined teachings of two references—McDermott and CN953—and Sportspower relies on the same McDermott reference in the present case.

_____

[2] Although in the present case Crowntec's '350 patent did not claim priority to CN261 to formally link the two applications, what matters for purposes of introducing the CN261 patent's history is that the two patents are materially

In his effort to rebut Sportspower's invalidity position, Crowntec's expert has argued that the jury should give little or no weight to the McDermott reference because it was previously cited by the PTO during prosecution.[3] Sportspower should be entitled to respond by pointing to the Chinese Patent Office's reliance on McDermott as being highly relevant to the validity of the claims. It would be fundamentally unfair for Crowntec to proclaim that there cannot be any material disclosures in McDermott but prevent Sportspower from showing conclusive proof that there are. Indeed, if the Chinese Patent Office's decision on CN261 had been issued while the '350 patent was being prosecuted, Crowntec would have been obligated to disclose that fact to the PTO to fulfill its duty of candor. *See* Manual of Patent Examining Procedure, § 2001.06(a) (Aug. 2017 rev.) ("Applicants and other individuals, as set forth in 37 CFR 1.56, have a duty to bring to the attention of the Office any material prior art or other information cited or brought to their attention in any related foreign application. The inference that such prior art or other information is material is especially strong where it has been used in rejecting the same or similar claims in the foreign application or where it has been identified in some manner as particularly relevant.").

---

identical. The reason that Crowntec's '350 patent does not claim priority to CN261 is discussed below, regarding Sportspower's inventorship claim.

While it is true that courts should exercise caution in allowing foreign patent events to be presented to the jury, courts have found it appropriate to allow the jury to hear such evidence when the evidence is probative and does not involve "unique aspects of foreign patent law." *Apple Inc. v. Motorola, Inc*., 757 F.3d 1286, 1312 (Fed. Cir. 2014); *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1290 (Fed. Cir. 2009). For example, in determining whether one element is technologically equivalent to another, courts have found foreign patent activities to be relevant. *See, e.g., Tanabe Seiyaku Co., Inc. v. U.S. Int'l Trade Comm'n*, 109 F.3d 726, 733 (Fed. Cir. 1997) ("Tanabe's statements to foreign patent offices suggest to a person skilled in the art that other solvents, including butanone, may not be interchangeable with the claimed solvents."); *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1116 (Fed. Cir. 1983). ("[R]epresentation[s] to foreign patent offices should be considered ... when [they] comprise relevant evidence."). In the present case, the central dispute concerning McDermott is whether and to what extent McDermott teaches or renders obvious the claimed structural elements of the '350 patent's tube couplings. Such issues are fundamental questions that arise in almost *all* patent disputes—they are not unique to Chinese patent law. Indeed, the Trade-Related Aspects of Intellectual Property Rights (TRIPS)

---

[3] Notably, the McDermott reference was cited as a secondary reference by the PTO, while the Chinese Patent Office and Sportspower's present invalidity

international treaty's first provision setting the minimum standards for patent protection for all WTO member countries (including China) is that "patents shall be available for any inventions . . . provided that they are new [and] involve an inventive step [i.e., are nonobvious]" as compared to the prior art. *See* TRIPS Art. 27(1) & n.5.

Another reason (independent of the foregoing) to allow the CN261 invalidity decision into evidence relates to Crowntec's willfulness allegations. Although Sportspower denies any such culpable mindset, Crowntec contends that Sportspower has not only infringed the '350 patent, but willfully infringed such that Crowntec is entitled to tremble damages. Dkt. No. 19, pp. 13-14, ¶¶ 20-22. A substantial defense and good-faith belief that the asserted patent claims are invalid (even if ultimately unsuccessful) negates a contention of willfulness. *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1352 (Fed. Cir. 2000) (affirming denial of enhanced damages where "[t]he district court observed that [the defendant] mounted a substantial, albeit unsuccessful, challenge on the issues of validity and infringement"); *Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 413 (Fed. Cir. 1993) ("Enhanced damages are punitive, not compensatory. Therefore, an infringer may generally avoid enhanced damages with a meritorious good faith defense and a substantial challenge to

contentions rely on McDermott as a primary reference.

Brief in Opposition to Crowntec's Motion *in Limine* - 12

No. 8:17-cv-2032-JLS-KES

infringement.").   That good-faith belief can be based in whole or in part on a foreign patent office's invalidity decision on claims in a related patent. *See, e.g., BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1223 (Fed. Cir. 1993) ("[T]he invalidation of Windsurfing's British patent served to strengthen further BIC's belief that the claimed invention was obvious" for purposes of its defense to willful infringement.).[4] It would be grossly unfair for Crowntec to accuse Sportspower of willfully infringing but not allow Sportspower to point to the Chinese Patent Office's decision on CN261 as evidence that Sportspower genuinely believes the asserted claims of the '350 patent are invalid for similar reasons.

The ultimate fate of the CN261 patent will also help the jury understand Mr. Chen's and Sportspower's mindset in two other relevant and important ways. First, Mr. Chen is expected to testify at trial that he doubted all along whether the invention disclosed in the CN261 patent and '350 patent was patentable, as he viewed it more as a mere marketing gimmick rather than a technological improvement. The actual invalidity of the CN261 patent helps to corroborate Mr. Chen's belief of invalidity and explains why Sportspower was reluctant to pay

---

[4] *See also Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:09-CV-1685, 2014 WL 12489857, at *2 n. 2 (M.D. Pa. May 27, 2014) ("[F]oreign proceedings can be relevant to claims of willful infringement, which are at issue in this case.")

Crowntec for an infringement release under the 2016 settlement—and would not have done so absent Crowntec's coercive tactics. *See supra* Issue No. 1. Second, Mr. Chen's belief that the invention was an unpatentable marketing gimmick, corroborated by the actual invalidity of the CN261 patent, also helps to explain why Mr. Chen had little reason to seek to add himself as an inventor to the '350 patent until Crowntec began threatening Sportspower's customers with infringement allegations. *See infra* Issue No. 4.

Finally, Crowntec contends that allowing Sportspower to introduce evidence about the Chinese invalidity judgment would "unavoidably introduce at least some aspects of the prohibited prior art" that the court has ordered may not be relied on by Sportspower at trial.   Dkt. No. 104, at 11. It is neither necessary nor "unavoidable" that the secondary reference relied on by the Chinese Patent Office, CN953, will be presented in any meaningful way to the jury. Sportspower intends to fully abide by the court's order preventing it from relying on CN953 to prove that the asserted claims are invalid at trial, and will elicit no testimony or present any documents to the jury that indicates the substance of the CN953 reference during trial—unless, of course, Crowntec opens the door for such evidence to come in.

**ISSUE NO. 3**
**Exclusion of Mr. Reed's Expert Testimony**
**Concerning Supplemental Tabs 7A and 7B to His Report**

Crowntec asks the court to exclude any testimony or opinions concerning Tabs 7A and 7B to Mr. Brett Reed's expert report, which were served on Crowntec after Mr. Reed's initial report was submitted. Essentially, Tabs 7A and 7B provide updated calculations based on data that Mr. Reed had in his possession, but was unaware of, at the time he served his initial report.

Crowntec's objection exalts form over substance. Mr. Reed did not fundamentally change or add to his opinions or analysis. Rather, he noted that he believed certain information was "missing," explained how that information would have affected his analysis had he been in possession of it, and then supplemented with the updated calculations as soon as he became aware of the information he mistakenly believed was missing. His opinions and the full basis for them were disclosed pursuant to Rule 26(a)(2).

Crowntec's central complaint is its belief that new Tabs 7A and 7B "introduced a new comparison of Sportspower's costs relative to Crowntec's *costs*; whereas his previous calculation and analysis was based on Sportspower's costs compared to Crowntec's *pricing*." Dkt. No. 104, at 15. However, Mr. Reed's report was always based on cost comparisons. *See* Reed Report, Dkt. No. 101-1, at 4 ("As seen in Tab 7, the overall *cost* changes were similar for Sportspower and

Crowntec.") (emphasis added); *id.* at 7 (original Tab 7 titled "Mr. Harrington's Calculation of Sportspower's Increased Costs Ignores *Overall Cost Trends*") (emphasis added). The purpose of this cost comparison was to "indicat[e] that steel cost increases and exchange rate factors" were the primary drivers of any cost changes, rather than material cost savings attributable to the '350 patent's design, as was Crowntec's expert's theory. *Id.* at 3-4.

Mr. Reed endeavored to prove that any cost changes were not attributable to the patented design by comparing two data points. The first data point was the actual cost difference to Sportspower of switching away from the accused trampoline design in 2017 to the non-accused trampoline design in 2018. *Id.* at 3-4, 7. The second data point was the actual price difference to Crowntec of making the *same* trampoline in 2017 and 2018. *Id.* He concluded that Sportspower's increased cost was comparable to Crowntec's increased pricing, on a percentage basis, indicating that the reason for the cost changes had to do with increasing steel prices and currency exchange rates, not the patented design. *Id.*; Dkt. No. 101-2, at 3 (Mr. Reed explaining that the "exchange rate and the costs of steel [were] increasing dramatically" over the relevant time). Overall, calculating the percentage increases of these data points, whether measured as cost per se or as pricing (which subsumes and is generally proportional to costs), he concluded that the results soundly rebutted Crowntec's position. *See* Dkt. No. 101-2, at 8 (Mr.

Reed testifying that "the difference between costs and price would be driven by margin, and so as long as the expectation is that margins would continue to be consistent, then you would—you would expect the price data to give you a good representation of cost.").

The reason Mr. Reed compared Sportspower's costs to the specific Crowntec pricing information in Tab 7 was that he believed other information which would have helped him better isolate Crowntec's underlying costs within its pricing was unavailable. He candidly explained as much in his original report, where he stated "[o]n Tab 7, I do acknowledge one other change that I cannot account for due to missing information from Crowntec." Dkt. No. 101-1, at 4 n. 64; Dkt. No. 101-1, at 7 (*see* "Note" at bottom).  Specifically, he explained that if he could determine the specific prices Crowntec had been charging some of its customers (recognizing that "[i]t is possible" that the pricing might differ for direct sales vs. sales to distributors), that "would impact the measured cost increase." Dkt. No. 101-1, at 4 n. 64.

Then, in the process of preparing for his deposition, Mr. Reed realized that he could link the pricing information he originally cited in Tab 7 to the underlying factory work orders in order to better isolate the amount of the pricing that was attributable to Crowntec's cost.  Dkt. No. 101-2, at 9-10.  Less than 48 hours after making this discovery, he supplemented his report by providing updated Tabs 7A

and 7B. *Id.* at 15.  Mr. Reed was questioned at length during his deposition on Tabs 7A and 7B. *See* Dkt. No 101-2, at 2-16. During this questioning, he confirmed that "it changes the numbers, but the conclusion's the same, that it is very clearly not design changes . . . that account for the changes we see both on the left side and the right side of these charts." *Id.* at 5-6.

In sum, Mr. Reed disclosed his opinion, as well as the full and complete basis for it, in his original report. He included a candid explanation of what data he believed was unavailable, including how that data could affect his calculations, and promptly supplemented the moment he discovered that he was able to link two documents together to more accurately calculate Crowntec's costs. The alleged "new" information in Tabs 7A and 7B was fairly disclosed to Crowntec as providing the basis for Mr. Reed's opinions, Crowntec already deposed Mr. Reed about it, and it should be admitted at trial.

### ISSUE NO. 4
### <u>Realignment of the Parties</u>

Even though Sportspower is and has been the named plaintiff for this lawsuit since the outset, and even though Sportspower has its own affirmative declaratory judgment claim of inventorship that carries its own burden of proof, Crowntec seeks to realign the parties so that Crowntec may present its case in chief at trial before Sportspower does.

Crowntec contends that it is the "natural plaintiff" and that the "primary purpose" of this lawsuit is Crowntec's infringement claim. But Crowntec only reaches this conclusion by beginning the story of this dispute far too late.  The parties' dispute did not begin on October 4, 2017, when Crowntec threatened Sportspower's customers with allegations of patent infringement.  Dkt. No. 104, at 17. Rather, it began on August 15, 2011, when Crowntec filed the application that later issued as the '350 patent, omitting Samuel Chen as a named inventor.

Mr. Warren Hsiang and Mr. Samuel Chen conceived of and jointly developed the subject matter of the '350 patent. Dkt. No. 1, at ¶ 24. Even though the '350 patent application was a literal translation of Chinese Patent No. CN102487261 ("CN261") containing the same material invention disclosure (Dkt. No. 53-1, at 1-2; Dkt. 66-1, at ¶ 2), and even though both Mr. Hsiang and Mr. Chen were named as co-inventors of the CN261 patent, Crowntec filed the '350 patent solely in the name of Mr. Hsiang and never disclosed the CN261 patent to the PTO or claimed priority to it. *See* Dkt. No. 22, at 3-4.

The '350 patent later issued in 2015. Crowntec and Sportspower were at odds and eventually executed the settlement agreement discussed above (*see* Issue No. 1) in 2016. Although Sportspower believed that settlement agreement released it from any patent infringement liability, Crowntec obviously believed otherwise.

It soon began threatening Sportspower's customers of patent infringement. Dkt. No. 104, at 17.

It was Sportspower, not Crowntec, that went to court. Dkt. No. 1. In addition to its declaratory judgment claim of noninfringement, Sportspower asserted an affirmative claim of joint inventorship and ownership of the '350 patent. *Id.* at ¶¶ 24-26. While Crowntec alleges that "Sportspower has never filed a claim seeking declaratory judgment of invalidity" and is "merely defending against Crowntec's claims of infringement" (Dkt. No. 104, at 17-18), this is wrong. First, a claim of improper inventorship *is* an affirmative claim that the patent is invalid. *Trovan, Ltd. v. Sokymat SA, Irori,* 299 F.3d 1292, 1301 (Fed. Cir. 2002) ("A patent is invalid if more or less than the true inventors are named."). Second, Sportspower's claim more broadly goes to the issue of *ownership* on account of Mr. Chen's joint inventorship. *See* Dkt. No. 1, at Count II (seeking "Declaratory Judgment of Joint Ownership" based on Mr. Chen being a co-inventor). Success on Sportspower's claim of improper inventorship would deem Mr. Chen a joint inventor and thus a joint owner of the '350 patent, entitling him to make beneficial use of the patent without accounting to Crowntec. *See* 35 U.S.C. §§ 261, 262, 256. Indeed, claims of inventorship are often filed and litigated in the absence of any counterclaims for infringement. *See, e.g., Falana v. Kent State Univ.,* 669 F.3d 1349, 1354 (Fed. Cir. 2012) ("Falana filed the present § 256 action against Kent

State, KDI, Seed, Doane, and Khan to correct the inventorship of the '789 Patent.").

In short, Sportspower's claim of inventorship is not merely a defense against infringement; it seeks relief above and beyond what a judgment of noninfringement can provide. Where claims such as this are filed "to obtain redress for alleged wrongs" by the defendant, realignment is inappropriate. *See Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*, No. SACV 11-0313 DOC (CWx), 2011 WL 4965111, at *5 (C.D. Cal. Oct. 18, 2011) ("Because NADW pursued a 'benefit beyond the scope of what the other party could be expected to bring suit for,' NADW's suit was not anticipatory.").

The sole case relied on by Crowntec that specifically addresses the issue of party realignment in the context of patent infringement is *Plumtree Software, Inc. v. Datamize, LLC*, No. C 02-5693 VRW, 2003 WL 25841157, at *2 (N.D. Cal. Oct. 6, 2003). But the facts of *Plumtree* are nothing like the present case. There, the declaratory judgment plaintiff filed its suit several months after the patent owner had already filed an infringement suit in a different forum. *Id.* at *3 ("Datamize was the first party to sue on the issue of infringement of the '137 patent. It filed the original patent infringement suit in May of 2002, seven months before Plumtree filed its action for declaratory relief on the same issue."). As such, the court found that the "basic rationale for declaratory judgment is inapposite"

and "the 'Damoclean' threats to potential defendant Plumtree [did] not exist." *Id.* at *4. Moreover, the declaratory judgment plaintiff was viewed as a "vigorous [forum] shopper" who had "gone to considerable lengths to deprive [the patent owner] of its choice of forum." *Id.* at *5. Here, by contrast, Sportspower was the first and the only party to file suit.  There is no credible allegation of any forum shopping by Sportspower, given that both parties are located in Asia and Crowntec never challenged jurisdiction or venue.

Moreover, ostensibly the declaratory judgment plaintiff in *Plumtree* had not asserted an affirmative claim carrying its own burden of proof, such as invalidity. *See id.* at *4 (discussing the parties' burdens of proof only as to infringement). That makes all the difference. As one court explained while distinguishing *Plumtree*, where both parties have affirmative burdens of proof as to their respective claims, neither is the "natural" plaintiff:

> Animal Care's request for a declaratory judgment goes beyond simply asserting noninfringement, and actively seeks a declaration that Hydropac's patents are invalid. This is enough for Animal Care to assume its own burden of proof on the invalidity claim. **No claims of invalidity appear to have been at issue in *Plumtree*.**
>
> . . .

Given that both parties have proof obligations, **there is no particular logic that places one in a more "natural" position as plaintiff**. *Animal Care Sys., Inc. v. Hydropac/Lab Prods., Inc.,* No. 13-cv-00143-MSK-BNB, 2014 WL 103812, at *2 n. 2 (D. Colo. Jan. 10, 2014) (internal citations omitted) (emphases added).[5]

In this case, Sportspower has the burden of proving its affirmative inventorship claim by clear and convincing evidence, *Falana*, 669 F.3d at 1356, and success on that claim goes beyond a mere defense against infringement. Under the sound reasoning of *Animal Care,* Sportspower should remain the plaintiff and present first at trial.

Other courts have taken similar approaches to *Animal Care*, granting motions to realign parties only if the declaratory judgment plaintiff had asserted no claims for which they bore the burden of proof. *See, e.g., Guidetech, Inc. v. Brilliant Instruments, Inc.*, No. C 09-5517 CW, 2014 WL 12643007, at *2 (N.D. Cal. Mar. 25, 2014) ("Because invalidity is no longer at issue, GuideTech is the

---

[5] The court in *Animal Care* also sharply criticized *Plumtree's* overall reasoning. *Id.* at *1 n. 1 ("This Court finds the very fundamental underpinnings of *Plumtree* to be unpersuasive. The Court in *Plumtree* assumed that, because courts often realign parties in order to maintain diversity jurisdiction (where the proper alignment of parties has an actual substantive significance), courts can use the same power to realign parties for more nebulous reasons. *Plumtree* cites no significant authority for the conclusion that realignment for non-jurisdictional purposes is appropriate

sole party bearing the burden of proof in this case. The motion is GRANTED and the parties are realigned so that GuideTech is the plaintiff and Brilliant is the defendant."); *Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1344 (8th Cir. 1996) (holding, in a trademark dispute, that "[b]oth Labatt and A–B bore the burden of proof on distinct counts of their causes of action. The District Court understandably chose to allow the actual plaintiff, the party that filed the lawsuit, to proceed first.").

Finally, Crowntec's arguments that realignment would streamline the trial and avoid confusion for the jury is overblown. As patent cases go, this one is already streamlined and comparatively simple, involving a single non-complex patent and a handful of claims, with only a few claim terms in dispute for both infringement and validity purposes. To the extent some marginal efficiency or clarity benefit might lost in the absence of realignment, that can be offset by the preliminary and final jury instructions. Regardless, such potential but curable concerns do not overcome the fact that Sportspower was the first and only party to file suit, raising an affirmative claim for which it bears the burden of proof. *See FCE Benefits Administrators, Inc. v. Training, Rehab. & Dev. Inst., Inc.*, No. 15-cv-01160-JST, 2016 WL 4426897, at *3 (N.D. Cal. Aug. 22, 2016) (granting

---

(nor clearly delineating the considerations that might warrant such a realignment), and thus, this Court is reluctant to give any weight to *Plumtree*.").

realignment despite potential juror confusion because "TRDI is the only party bringing affirmative claims and with a burden of proof").

## **<u>CONCLUSION</u>**

For the foregoing reasons, Crowntec's Motion *in Limine* should be denied as to all issues 1-4.

Respectfully submitted,

Dated: November 29, 2019

s/ *Daniel H. Brean*
Daniel H. Brean

*Attorney for Sportspower Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of November, 2019, I electronically filed the foregoing **SPORTSPOWER'S BRIEF IN OPPOSITION TO CROWNTEC'S MOTION *IN LIMINE*** with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

**THE WEBB LAW FIRM**

s/ *Daniel H. Brean*
Daniel H. Brean